**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: _3/30/2023_____

**DRIP CAPITAL, INC.,**

                              **Petitioner,**

                    **-against-**

**M/S. GOODWILL APPARELS.,**

                              **Respondent.**

**22-cv-2806 (ALC)**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, United States District Judge:**

Petitioner Drip Capital Inc. ("Drip Capital" or "Petitioner") filed a petition ("Petition") pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, ("New York Convention"), 9 U.S.C. § 201 et seq., and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., seeking confirmation and enforcement of a foreign arbitration award (the "Award") issued against Respondent M/S. Goodwill Apparels ("Respondent"). For the reasons set forth below, Drip Capital's Petition to confirm the Award is **GRANTED**.

## BACKGROUND

### I.        Procedural Background

Petitioner filed a Petition to confirm a foreign arbitration award on April 5, 2022. ECF No. 1. On that same day, Petitioner moved to confirm the Award, ECF No. 4, and filed a memorandum in support ("Motion" or "Mot."). ECF No. 6. On May 6, 2022, Petitioner moved for permission pursuant to Rule 4(f)(3) to serve process upon the Respondent M/s. Goodwill Apparels by email and by international courier service. ECF No. 10. On September 1, 2022, the Court granted Petitioner's request for alternative service by email and denied Petitioner's request to serve Respondent through international courier. ECF No. 12.  Petitioner filed an affidavit of service affirming that Respondent was served with the Petition and motion to confirm the Award on

September 2, 2022. Affidavit of Service, ECF No. 13. On September 27, 2022, Plaintiff requested a Certificate of Default. ECF No. 15. The Clerk of the Court entered a Certificate of Default on September 29, 2022. ECF No. 17.

On October 4, 2022, Petitioner moved for default judgement, seeking an order confirming the Award. ECF Nos. 20-21, 24. Respondent was served with Petitioner's motion papers on October 4, 2022. Certificate of Service, ECF No. 22. The Court then issued an Order to Show Cause on October 13, 2022, directing Respondent to show cause why the Petition should not be deemed as unopposed. *See* OSHOW, ECF No. 25. The Court ordered Respondent to file a written response by October 28, 2022. *Id*. The Court's Order, along with another copy of the motion papers, was served on Respondent on October 14, 2022. Certificate of Service, ECF No. 26.

On October 28, 2022, Respondent filed a letter responding to the OSHOW. ECF No. 27. In its letter, Respondent explained that the Award is "under appeal proceedings before the Hon'ble High Court of Bombay," and requested that the Court "grant time to make appearance through the Attorney and submit . . . detailed counter submissions."  *Id.* On November 29, 2022, Petitioner filed a letter replying to Respondent, and Petitioner renewed its request for an entry of judgment. ECF No. 28. On December 28, 2022, the Court granted Respondent's extension request and ordered Respondent to file its opposition to the petition by January 12, 2023. ECF No. 29.

On January 12, 2023, the Respondent filed a *pro se* submission in response to the Court's order. To date, Respondent has yet to appear through counsel in this action. On January 12, 2023, the Court directed the Petitioner to reply to the Respondent's submission by January 27, 2023. ECF No. 32. On January 19, 2023, Petitioner filed its response to the Respondent's January 12 submission and renewed its request for an entry of judgment. ECF No. 33. The Petition and accompanying motion are deemed fully briefed.

II.      **Factual Background**

Petitioner Drip Capital is a corporation organized under the laws of the State of Delaware with its principal place of business in the State of California. Pet. ¶ 2; Mot. at 2. Respondent M/s. Goodwill Apparels is a partnership firm organized under the laws of India, represented through its partners Mr. S. Kittusamy and Mr. S. Somasundaram, with an office located in Tamil Nadu, India. Pet. ¶ 3; Mot. at 2-3.

Petitioner is in the business of, among other things, factoring receivables. Pet. ¶ 9; Mot. at 3. In or around November 2018, Respondent approached the Petitioner to request entering into a factoring arrangement whereby it would borrow from Petitioner against payments owed to Respondent. Pet. ¶ 9; Ex. A to Decl. of Ganediwala ("Award") ¶ 2, ECF No. 5-1. In December 2018, the parties entered into "certain agreements to establish such a factoring agreement." Pet. ¶ 10; Ex. B to Decl. of Ganediwala ("Factoring Agreement"), ECF No. 5-2.

Per the terms of the Factoring Agreement, Drip Capital was to advance to the Respondent 80% of the invoice value of receivables from a third party as upfront consideration and the third party was liable to pay the full invoice value directly to Drip Capital. Award ¶ 4. The agreement between the parties allowed the Petitioner to demand full invoice payment from Respondent M/s. Goodwill Apparels in case of breach of the agreement. *Id.* Respondent received advances of funds from Petitioner and made partial payment toward its obligations under the parties' agreement. Pet. ¶ 11; Award ¶ 5. Respondent ceased making payments as of in or around May 2019, leaving an outstanding balance of $294,254.29 payable to the Petitioner as of November 30, 2019 (not including interests and other amounts now due). Pet. ¶ 11; Award ¶ 5. The third party "refused to

make further payment owing to a commercial dispute between [them] and the Respondent." Award ¶ 5.

Petitioner followed up with the Respondent, including sending a "Demand Notice" demanding payment of the entire astounding balance payable under the agreement. Award ¶ 6. Because Respondent ceased to pay the amounts due to Petitioner, Petitioner commenced arbitration in accordance with the parties' agreement. Mot. at 3; Factoring Agreement at 16.

On November 5, 2019, Mr. Rahul Rameshwar Totala (the "Arbitrator") was appointed as sole arbitrator by the Petitioner pursuant to § 17.2 of the Factoring Agreement, which provided: " . . . all disputes and differences arising between the Parties hereto in connection this Agreement shall be referred to the Arbitration . . . to be held at Mumbai . . . and shall be referred to the sole arbitration [of] a person to be appointed by Factor . . . [sic]." Pet. ¶ 4; Mot. at 1; Award ¶ 7; Factoring Agreement at 16. The arbitration was conducted in accordance with the Arbitration and Conciliation Act of India, 1996, read with the Arbitration and Conciliation (Amendment) Act of India, 2019 (the "India Arbitration Act"). Pet. ¶ 2; Award ¶¶ 8, 9; Factoring Agreement at 16-17.

The Arbitrator gave notice of the arbitration to both parties in accordance with the India Arbitration Act—the law applicable to the arbitration and the parties' agreement. Pet. ¶ 14; Award ¶ 8. In November 2019, the Respondent communicated with the Arbitrator, indicating jurisdictional objections to the proceedings. Pet. ¶ 15; Award ¶ 9. The Arbitrator denied these objections and the Arbitrator noted in the Award that "Respondent did not attend the jurisdiction hearing . . . ." Pet. ¶ 15; Award ¶¶ 11-12. The Respondent did not appear further to contest the substantive claims in the arbitration proceeding. Pet. ¶ 16; Award ¶¶ 15, 19, 20, 21. The Respondent was nonetheless properly given notice of the proceedings and had full opportunity to participate in it. Pet. ¶ 17. Award ¶ 16. In March 2020, Respondent once again communicated with

4

the Arbitrator requesting not to proceed with the arbitration. Pet. ¶ 18. Award ¶¶ 14-15. The Arbitrator continued to communicate to the Respondent the requirements for filings and other acts that would be needed to defend the Arbitration and the deadlines for those filings and acts. Pet. ¶ 21; Award ¶¶ 16, 17, 20, 21.

On November 25, 2020, the Arbitrator concluded the arbitration and issued the Award based on the submissions required of and made by the Petitioner. Pet. ¶ 23; Award ¶ 22.  In the Award, the Arbitrator identified six issues framed by the Petitioner's claim and included a detailed discussion and resolution of all those issues. *See* Award ¶¶ 23-48; Pet. ¶ 24. In short, the Arbitrator concluded that the Respondent had breached the terms of the Factoring Agreement, that the Petitioner had a right of recourse of against the Respondent to recover outstanding payments under the assigned receivables, and that Petitioner had proved that Respondent was liable to pay the Petitioner for this outstanding balance. Award ¶ 23. The Arbitrator provided the terms of the Award as follows:

> [I]t is hereby ordered that:
>
> (a) the Respondent shall pay to the Claimant an amount of USD 294,254.28/- (USD Two Hundred and Ninety Four Thousand & Two Hundred and Fifty Four and Twenty Eight cents Only) as per the Particulars of Claim specified in Exhibit D of Statement of Claim, together with interest @ 8.7% p.a. on USD 294,254.28/- (USD Two Hundred and Ninety Four Thousand & Two Hundred and Fifty Four and Twenty Eight cents Only) to be calculated from 1st December, 2019 till the date of actual payment;
>
> (b) the Respondent shall pay 50% of the cost of instant arbitration to the Claimant i.e. INR 3,42,512.5/- [342,512.5] towards the Respondent's share of the cost incurred towards arbitration proceedings;[1]
>
> (c) The amount of USD 22,440.58 as mentioned aforesaid, which is lying with the Claimant pending settlement, shall be adjusted by the Claimant against the aforesaid amounts awarded by this tribunal. [sic]

---

[1] Per exchange rates published by the United States Federal Reserve System (available a https://www.federalreserve.gov/releases/hl0/20201130/), as of November 25, 2020, USD $4,644,24 (342,512.57 divided by 73.75 = 4,644,24))]. Pet. ¶ 25.

(d) The parties shall bear their own cost incidental to the present arbitration proceedings.

Award ¶ 49; Pet. ¶ 25. As of the date that the Petition was filed, April 5, 2022, the amount awarded to Petitioner totals $331,916.85 based on the Award.[2]

## STANDARD OF REVIEW

### I.   New York Convention

Petitioner brought this action under the New York Convention, which is enforced in the United States through Chapter 2 of the FAA, 9 U.S.C. § 201 et seq. The Court must determine if it has jurisdiction over the Petition pursuant to the New York Convention. *See Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (explaining that 9 U.S.C. § 203 confers "federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the [New York] Convention").

Article I of the New York Convention states that it "appl[ies] to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal," as well as "to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." New York Convention, art. I(1). In implementing the New York Convention, the FAA likewise provides that the New York Convention applies to "[a]n arbitration agreement or arbitral award arising out of a legal

---

[2] This includes (i) the principal amount of $271,813.70 of the Award (as adjusted downward from $294,254.28 by $22,440.58 per the Award ¶ 49(d)) (the "Principal Amount"), (ii) plus simple interest on the Principal Amount of the Final Award since December 1, 2019, at 8.7% per year through the date of this Petition, April 5, 2022, $55,458.91 and (ii) costs of $4,644.24, with additional interest to accrue on the Principal Amount (or any outstanding unpaid amount) at the simple interest rate of 8.7% after April 5, 2022 (a daily rate of $64.77 per day), until the Final Award is fully paid. Pet. ¶ 26.

relationship, whether contractual or not, which is considered as commercial," although it does not

cover "[a]n agreement or award arising out of such a relationship which is entirely between citizens

of the United States . . . unless that relationship involves property located abroad, envisages

performance or enforcement abroad, or has some other reasonable relationship with one or more

foreign states." 9 U.S.C. § 202.

An arbitration agreement falls within the scope of the New York Convention if four

requirements are met: "(1) there must be a written agreement; (2) it must provide for arbitration in

the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4)

it cannot be entirely domestic in scope." *Dumitru v. Princess Cruise Lines, Ltd.*, 732 F. Supp. 2d

328, 335 (S.D.N.Y. 2010) (quoting *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith

Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999)). With respect to the fourth requirement,

"[t]he Convention applies to 'arbitral awards not considered as domestic awards in the State where

their recognition and enforcement are sought.'" *Zeiler v. Deitsch*, 500 F.3d 157, 164 (2d Cir. 2007)

(quoting 9 U.S.C. § 202). An action within the New York Convention's scope is "deemed to arise

under the laws and treaties of the United States." 9 U.S.C. § 203.

## II.     Confirmation of Award

Any party to an arbitration resulting in an arbitration award that falls under the New York

Convention may seek an order confirming the award from a district court within three years of the

award. 9 U.S.C. § 207; *see also id.* § 203 ("The district courts of the United States ... shall have

original jurisdiction over such an action or proceeding, regardless of the amount in controversy.")

A district court "shall confirm" an arbitration award "unless it finds one of the grounds for refusal

or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207.

"Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to

recognize an award." *Temsa Ulasim Araclari Sanayi v. Ticaret A.S.*, No. 22 CIV. 492 (JPC), 2022 WL 3974437, at *3 (S.D.N.Y. Sept. 1, 2022) ("Temsa") (quoting *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica*, Inc., 403 F.3d 85, 90 (2d Cir. 2005).

Under Article V of the New York Convention, "recognition and enforcement of the award may be refused" only if the party against whom the award is invoked "furnishes . . .  proof" that: (1) the parties to the arbitration agreement were "under some incapacity" or the agreement "is not valid" under the law designated by the parties, or, in the event they have not designated any, the law of the country where the award was made; or (2) "the party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case;" or (3) "[t]he award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration," although any "part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced;" or (4) "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place;" or (5) "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, art. V. Additionally, "[r]ecognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that" (6) "[t]he subject matter of the difference is not capable of settlement by arbitration under the law of that country" or (7) "[t]he recognition or enforcement of the award would be contrary to the public policy of that country." *Id.*

The Second Circuit has held that confirmation under the New York Convention is a "summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." *Zeiler*, 500 F.3d at 169 (citations omitted); *see also Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc*., 126 F.3d 15, 23 (2d Cir. 1997) (an application to confirm a foreign arbitral award "is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."). In fact, the New York Convention "'evince[s] a pro-enforcement bias' by obligating courts . . . to enforce a foreign arbitral award, subject only to limited exceptions." *Esso Expl. & Prod. Nigeria Ltd. v. Nigerian Nat'l Petroleum Corp.*, 40 F.4th 56, 62 (2d Cir. 2022) (quoting *Corporación Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016) ("Pemex")). "A district court judge 'does little more than give the award the force of a court order.'" *Temsa*, 2022 WL 3974437, at *4 (quoting *Zeiler*, 500 F.3d at 169). In doing so, a district court affords significant deference to the arbitrator's findings. *See Commodities & Mins. Enter. Ltd. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 809 (2d Cir. 2022) (a district court should be "extremely deferential" to the findings of the arbitrator).

"In sum, a district court must enforce an arbitral award unless a litigant satisfies one of the seven enumerated defenses [under the New York Convention]; if one of the defenses is established, the district court may choose to refuse recognition of the award." *Id*. at 810 (quoting *Pemex*, 832 F.3d at 106). The "party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses" applies and this burden is a "heavy one, as the showing required to avoid summary confirmation is high." *Encyclopaedia Universalis S.A.*, 403 F.3d at 90 (citations omitted).

9

### III.     Default Judgment

The Second Circuit has noted that 'default judgments in confirmation/vacatur proceedings are generally inappropriate.'" *Leonardo Elecs. US Inc. v. Nomir Med. Techs., Inc.*, No. 1:20-CV-07773 (MKV), 2021 WL 371518, at *1 (S.D.N.Y. Feb. 3, 2021) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)). Even if a petition to confirm is unopposed, a court must still ensure that judgment is proper as a matter of law under the undisputed facts. *See D.H. Blair & Co.*, 462 F.3d at 109 (when a petition to confirm an arbitration award is unopposed, courts should treat the petition "as akin to a motion for summary judgment").

### IV.     *Pro Se* Submissions

Finally, as to the Respondent's *pro se* submissions, it is "well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citation omitted); *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (holding that a *pro se* party's pleadings must be liberally construed in his favor and are held to a less stringent standard than the pleadings drafted by lawyers). Nevertheless, a *pro se* party must comply with the relevant rules of procedural and substantive law. *Olle v. Columbia Univ.*, 332 F.Supp.2d 599, 607 (S.D.N.Y. 2004).

## DISCUSSION

### I.     Jurisdiction under the New York Convention

As a preliminary matter, the Court finds that it has jurisdiction over this Petition. The arbitral agreement in this mater falls within the scope of the New York Convention as the four jurisdictional requirements are satisfied. *See Dumitru*, 732 F. Supp. 2d at 335; 9 U.S.C. § 202. First, the Factoring Agreement is a written agreement. *See generally* Factoring Agreement.

Second, both the United States and India are signatories of the New York Convention. *See* New York Convention. Third, the subject matter of the Factoring Agreement—a factoring receivables agreement whereby Respondent would borrow from Petitioner against payments owed to the Respondent—is commercial in nature. *See* Factoring Agreement; Pet. ¶¶ 9-10. Lastly, the Respondent is a foreign corporation and therefore the New York Convention applies. *Scandinavian Reinsurance Co.*, 668 F.3d at 71 ("The New York Convention applies in this case because [a party] is a foreign corporation"); *Zeiler*, 500 F.3d at 164 (holding that the New York Convention applied to an arbitration agreement between Israeli corporations and United States corporations because "[t]he law chosen to govern the arbitration is based on a foreign system" and [t]he commercial transactions decided in the arbitration have a clear international character"); *see also Yusuf Ahmed Alghanim & Sons*, 126 F.3d at 19 (explaining that the Convention confers federal jurisdiction because the award "involv[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction"). Thus, the Court has jurisdiction under the New York Convention over this Petition.

## II.   Default Judgment

Petitioner argues that Respondent has defaulted by not answering the Petition and that the time for Respondent to answer the Petition had expired by the time Petitioner moved for default judgment. ECF No. 21. However, as explained previously, default judgments are generally inappropriate in confirmation of arbitration award proceedings. *See D.H. Blair & Co., Inc., v. Gottdiener*, 462 F.3d 96, 109-10 (2d Cir. 2006). Moreover, although Petitioner asserts Respondent's written submissions, dated October 28, 2022 and January 12, 2023, are simply *pro se* submissions meant to delay these proceedings, the Court construes these submissions as the Respondent's opposition to the Petition and accompanying motion to confirm. Therefore,

Respondent has not failed to respond to the Petition and the Court will deny Petitioner's request for a default judgment.

### III.     Confirmation of Award

A district court must enforce an arbitral award unless a litigant satisfies one of the seven enumerated defenses under the New York Convention, and if one of the defenses is established, the district court may choose to refuse recognition of the award. *Commodities & Mins. Enter. Ltd.* 49 F.4th at 810. The Court construes Respondent to raise one affirmative defense in its response to the Court's OSHOW. *See* ECF No. 27. The Court will address this argument.

In its response to the Court's OSHOW, the Respondent asserts that the Award at issue is "is under appeal before the Hon'ble High Court of Bombay," that the Award is "subject to the outcome and final order of the appellate court," and that, therefore, judgment should not be entered in this Court. ECF No. 27. Additionally, Respondent points to the Petitioner's current efforts to enforce the Award in India's courts. ECF No. 31. Petitioner acknowledges that Respondent docketed an appeal and that it is currently seeking to enforce the Award in India's courts but that these proceedings are not taking place in any arbitral forum. *See* ECF No. 28-1, Decl. of Raj Agrawal, ECF No. 33-1, Further Decl. of Raj Agrawal.

According to the New York Convention, a court may refuse to recognize and enforce an arbitration award if the party against whom the award is invoked furnishes proof that "[t]he award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." New York Convention, art. V(1)(e). "Provisions of the New York Convention 'anticipate the possibility of a party seeking confirmation in one country even though nullification proceedings are underway in another.'" *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 597 F. Supp. 3d 657, 665 (S.D.N.Y. 2022)

(quoting *Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1299 (10th Cir. 2020), cert. denied, —— U.S. ——, 141 S. Ct. 2793, (2021) ("CISMA").

> Article VI of the New York Convention states:
>
> If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security.

New York Convention art. VI. The New York Convention therefore "does not require a party seeking enforcement of an award in a secondary jurisdiction—here, the United States—to await the conclusion of all challenges to the award that may be pursued in the primary jurisdiction"—here, India. *Iraq Telecom Ltd.*, 597 F. Supp. 3d at 665 (citing *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 176 (2d Cir. 2017)). Additionally, a court in this district has acknowledged that the Tenth Circuit recently "observed that 'American judges hold—virtually unanimously—that under the New York Convention an arbitration award becomes binding when no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal).'" *Id.* (quoting *CISMA*, 970 F.3d at 1299); *see also Ministry of Def. and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100–01 (9th Cir. 2011) (arbitration award becomes binding when "no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal)").

Here, Respondent asserts an appeal of this award has been docketed in the Hon'ble High Court of Bombay. Petitioner claims it has not been served any papers by the Respondent and that Respondent is not actively litigating the appeal. ECF No. 28-1. I decline to adjourn the decision on the enforcement of the award. Even if the Court were to confirm that the Respondent is actively

litigating the appeal, the Court would still decline to delay enforcement of the award. The arbitrator was appointed in 2019; the arbitrator issued the award in 2020. Respondent did not fully participate in the arbitration proceedings and has caused delays in this case.

Under the Factoring Agreement, the arbitration award is final, conclusive, and binding on all parties. Factoring Agreement at 16. Additionally, Respondent has not indicated that it appealed the Award to another arbitral tribunal, or appeals tribunal. Finally, Respondent has not shown that any court in India has "set aside or suspended" the Award. New York Convention art. V(1)(e). Therefore, the Article V(1)(e) defense does not apply, and the Award is binding on the parties.

Even when liberally construed, Respondent has not raised any of the other enumerated defenses listed in Article V of the New York Convention. Because it is Respondent's burden to establish these defenses, the Court finds these defenses do not apply. Accordingly, the Award is final and entitled to confirmation. The Court confirms the Petitioner's timely application for confirmation of the Award.

## CONCLUSION

For the reasons above, the Petition is **GRANTED**. The Petitioner is directed to file a proposed judgment in accordance with the Award on or by **April 5, 2023**. The Clerk of the Court is respectfully directed to terminate ECF No. 4.

**SO ORDERED.**

Dated:   **March 30, 2023**
         **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**